UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMBER ZONA and BRIAN STAPLETON, On behalf of themselves and all other employees similarly situated, <br><br> Plaintiffs <br><br> vs. <br><br> CANANDAIGUA PUB, INC.; and RICHARD J. CARVOTTA, Individually and as Owner and Chief Executive Office of Canandaigua Pub, Inc.; <br><br> Defendants | **PLAINTIFFS' MEMORANDUM OF LAW** <br><br> **Civil Action No. 15-cv-6213** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**

# TABLE OF CASES CITED

Lynch v. United Servs. Auto. Assoc.
    491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007) ......................................................... 6

Scholtisek v. Eldre Corp.
    229 F.R.D. 381, 387 (W.D.N.Y. 2005) ..................................................................... 6

Denney v. Deutsche Bank AG
    443 F.3d 253, 270 (2d Cir. 2006) ............................................................................... 6

Frank v. Eastman Kodak Co.
    228 F.R.D. 174, 180 (W.D.N.Y. 2005) ......................................................... 6, 8, 9, 10

Hanlon v. Chrysler Corp.
    150 F.3d 1011, 1022 (9th Cir. 1998) ......................................................................... 7

Consol. Rail Corp. v. Town of Hyde Park
    47 F.3d 473, 483 (2d Cir. 1995) ................................................................................. 7

In re Drexel Burnham Lambert Group, Inc.
    960 F.2d 285, 291 (2d Cir. 1992) ........................................................................... 8, 9

Hansberry v. Lee
    311 U.S. 32, 42-43 (1940) .......................................................................................... 9

Moore v. Paine Webber, Inc.
    306 F.3d 1247, 1252 (2d Cir. 2002) ........................................................................... 9

In re NASDAQ Market-Makers Antitrust Litig.
    176 F.R.D. 99, l02 (S.D.N.Y. 1997) .................................................................... 10, 11

Gautreaux v. Pierce
    690 F.2d 616, 621 n.3 (7th Cir. 1982) ..................................................................... 11

In re Prudential Sec. Inc. Ltd. Pships Litig.
    163 F.R.D. 200, 209 (S.D.N.Y. 1995) ..................................................................... 11

Bourlas v. Davis Law Assocs.
    237 F.R.D. 345, 355 (E.D.N.Y. 2006) ..................................................................... 12

Lynn's Food Stores, Inc. v. United States
    679 F.2d 1350, 1352-53 (11th Cir. 1982) ................................................................ 13

In re Luxottica Group S.p.A. Secs. Litig.
    233 F.R.D. 306, 310 (E.D.N.Y. 2006) ..................................................................... 12

Wal-Mart Stores, Inc. v. Visa U.S.A.. Inc.
 396 F.3d 96, 114 (2d Cir. 2005) ................................................................................13

Eisen v. Carlisle & .Jacquelin
 417 U.S. 156, 176 (1974) ..........................................................................................14

# INTRODUCTION

This action was commenced on April 13, 2015, by former employees of Defendants. Plaintiffs alleged in the Action that Defendants: failed to provide tipped employees with proper wage payment notices; failed to provide tipped employees with proper wage statements; failed to pay hourly employees a "spread of hours" premium; and failed to pay hourly employees for all time worked, and that such practices violated the federal Fair Labor Standards Act ("FLSA") and the laws of New York, and that Plaintiffs therefore were entitled to recover unpaid wages and other damages.

The Parties, wishing to avoid continued litigation and the uncertainty of outcome, have entered into a proposed settlement, subject to this Court's approval.

Now before the Court is Plaintiffs' Unopposed Motion For Preliminary Approval of Class/Collective Action Settlement.

# RELEVANT FACTUAL INFORMATION

### A. The Parties' Claims and Defenses

Defendants own and operate restaurants in this District. There are eight locations at issue in this case, several of which are now closed. Defendants employ individuals in various capacities, including servers, bartenders, and kitchen staff. Servers and bartenders have the opportunity to earn tips; kitchen employees do not.

Defendants have a policy of paying tipped employees less than minimum wage, and applying a tip credit against their minimum wage obligation. This is permissible under both the FLSA and NYLL provided the employees are properly notified. Plaintiffs claim that Defendants did not properly notify tipped employees that they would be paid less than minimum wage

because they would earn tips. Plaintiffs have not claimed that any tipped employees actually received less than minimum wage, between their hourly pay and the tips they received.

Plaintiffs also claim that employees, both tipped and non-tipped, were not give certain notices required by the NYLL, and were not paid for one additional hour at the minimum wage for each shift worked in excess of ten hours, as is required by the NYLL.

Plaintiffs seek to recover unpaid wages. Plaintiffs also seek statutory damages, interest, attorneys' fees and costs. At all times Defendants have expressly denied liability with respect to these, and all other, claims made by Plaintiffs.

### B. History of the Litigation

Plaintiffs filed their complaint on April 13, 2015. Defendants filed a motion to dismiss on July 31, 2015, in which they attacked the Complaint on various grounds, including failure to properly state claims and the standing of the named Plaintiffs. Shortly thereafter, the Parties agreed to engage in meaningful settlement negotiations.

Once the Parties agreed to attempt settlement negotiations, they entered into discovery designed to allow each Party to evaluate its prospects and calculate an appropriate settlement position. This discovery consisted of payroll records and personnel records from all of Defendants' locations. Mullin Dec. ¶¶3,4,5.

### C. Experience of Class Counsel

Plaintiffs are represented by Justin Cordello of Cordello Law, PLLC, and Robert Mullin of Ferr & Mullin, P.C. ("Class Counsel"). Class Counsel is experienced in, and devotes a significant portion of its practice to, wage and hour litigation. Mullin Dec. ¶7. Class Counsel has the resources to properly prosecute an action of this size. Mullin Dec. ¶11.

### D. Settlement Negotiations

As previously stated, once the Parties agreed to attempt to settle this matter, Defendants supplied payroll and personnel records requested by Plaintiffs.

Class Counsel then served a settlement demand, after which the Parties exchanged various proposals. The Parties, through their attorneys, negotiated vigorously, culminating in a discussion during which a rough agreement was reached. After several document drafts, the Parties reached the agreement that is the subject of this motion (the "Settlement" or "Agreement"). Mullin Dec. ¶¶5,6,12.

Class Counsel has considered the discovery that took place and evaluated the claims and their likelihood of success. Class Counsel has considered factors such as the substantial risk of continued litigation, recent developments in case law, and the possibility that the case, if not settled now, might result in a less favorable recovery, or possible no recovery at all. Class Counsel, in consultation with the Named Plaintiffs, has concluded that the terms and conditions of the settlement are fair, reasonable and adequate, and are in the best interests of Class Members. Mullin Dec. ¶¶12-13.

Defendants, despite their defenses in the case, have concluded that it is in their best interests to settle this litigation. Defendants do not admit that the claims are true, or that Plaintiffs would ultimately succeed on the merits; Defendants wish to settle only to avoid the burden, expense, and uncertainty of continued litigation. Mullin Dec. ¶14.

### E. Settlement Terms and Process

#### 1. The Settlement Class

The settlement class is defined in the Agreement as follows:

All hourly employees who worked for Defendants from April 13, 2009 through January 20, 2016.

#### 2. Distribution

The Agreement calls for a settlement payment of $50,000.00, which, after service payments, costs, attorneys' fees, and costs of administration shall be distributed to Class Members (the "Settlement Fund").

The payment to each Class Member will be determined by a formula taking into account the position held and the class member's proportionate share of total payroll during the relevant period. A multiplier will be applied to the shares of tipped employees to account for their claims representing a larger portion of the action. Mullin Dec. ¶20.

The amount allocated to any Class Member that opts out of the Settlement will revert to Defendants. In the event that any checks to Class Members remain uncashed after 180 days, those funds will also revert to Defendants. Mullin Dec. ¶21.

#### 3. Notice to Class Members and Claims Process

Upon this Court's Preliminary Approval, Plaintiffs' Counsel will send a notice of settlement ("Notice") to the Settlement Class who shall be given forty-five (45) days from Preliminary Approval to opt out of the Settlement. Mullin Dec. ¶19.

#### 4. Release of Claims

Under the terms of the Agreement, Plaintiffs as well as Class Members who do not opt out will release certain claims, as set forth in the Agreement, subject to the approval of this Court. Mullin Dec. ¶25.

5. Attorneys' Fees and Costs

Class Counsel shall submit a request for reasonable attorneys' fees and costs in the amount of $20,000.00. Mullin Dec. ¶22.

6. Costs of Administration

Reasonable costs and fees incurred by Class Counsel in administering the Settlement Fund shall be paid from the Settlement Fund. These costs and fees are in addition to reasonable attorneys' fees and costs referred to in Section 5 above. Mullin Dec. ¶23.

7. Service Payments to Plaintiffs

The Named Plaintiffs will apply for service payments. Each of these individuals rendered service to the entire Class. Named Plaintiffs commenced the original case, met extensively with Class Counsel, and worked to encourage participation. Mullin Dec. ¶24. These amounts are separate from and in addition to the shares of the Settlement Fund that each will otherwise be eligible for. Mullin Dec. ¶24.

**ARGUMENT**

### A. The Court Should Conditionally Certify The FLSA Class

Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b). Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard. *see, e.g., Lynch v. United Servs. Auto. Assoc.*, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). In the initial, "conditional" certification phase, the named plaintiffs make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (citations omitted).

Here, Plaintiffs contend that the members of the FLSA Class are similarly situated for purposes of certification of a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs and FLSA Class Members are or were non-exempt hourly employees of Defendants'. Plaintiffs allege that, among other things, Defendants improperly paid them less than minimum wage. Accordingly, Plaintiffs urge that conditional certification of the FLSA Class under 29 U.S.C. § 216(b) is appropriate for settlement purposes in this case.

### B. The Court Should Provisionally Certify The Settlement Class

Certification of settlement classes is governed by Rule 23 of the Federal Rules of Civil Procedure. S*ee Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose-settlement, litigation, or otherwise-a court must ensure that the requirements of Rule 23(a) and (b) have been met."). That is, "[t]o qualify for class certification, a putative class must satisfy the four requirements of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b)." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180 (W.D.N.Y. 2005). Thus, the Court's threshold task is to determine, in

accordance with Rule 23(a), whether the following prerequisites are satisfied: (1) Numerosity Requirement, (2) Commonality Requirement, (3) Typicality Requirement, and (4) Adequacy of Representation Requirement. *See* FED. R. CIV. P. 23(a). Then, because Plaintiffs propose settlement classes pursuant to Rule 23(b)(3), the Court's next task is to determine whether common questions "predominate over any questions affecting only individual members" (the Predominance Requirement) and whether a "class action is superior to other available methods for fairly and effectively adjudicating the controversy" (the Superiority Requirement). FED. R. CIV. P. 23(b)(3); *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (a Rule 23(b)(3) settlement class is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."). All such requirements are met in this case.

1. Rule 23(a)(1): Numerosity Requirement

Rule 23(a)'s Numerosity Requirement provides that a proposed class must be so numerous that joinder of all members would be "impracticable." *see* FED. R. CIV. P. 23(a)(l). In the Second Circuit, it is presumed that a class with as few as 40 members satisfies the test for numerosity. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, the class is estimated to exceed three hundred people, well in excess of the required number. Mullin Dec. ¶17. Therefore, the Numerosity Requirement of Rule 23(a)(1) is satisfied for the settlement Subclasses.

2. Rule 23(a)(2): Commonality Requirement

Rule 23(a)'s Commonality Requirement mandates that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Here, there are questions of fact common to all Class Members – whether Defendants properly notified them of the application of a tip credit,

7

whether Defendants supplied them with written notices required by the NYLL, and whether Defendants paid them for one additional hour at the minimum hourly rate for shifts that exceeded ten hours.

Plaintiffs submit that these common questions satisfy the commonality requirement of FED. R. CIV. P. 23(a)(2).

### 3. Rule 23(a)(3): Typicality Requirement

The Typicality Requirement provides that the claims or defenses of the representative parties must be "typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). As a practical matter, the typicality analysis "tend[s] to merge" with the commonality analysis. *Frank*, 228 F.R.D. at 182. "The representative party has demonstrated typicality when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

In the present litigation, Plaintiffs assert that the claims for each Class Member arise out of the same type of factual and legal circumstances. Specifically, Plaintiffs contend that they and all Class Members allege the same injuries - that they were not properly notified that Defendant would apply a tip credit, that they did not receive notices required by the NYLL, and that they were not paid for an additional hour at the minimum wage rate for shifts that exceeded ten hours. As such, Plaintiffs argue the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Rule 23(a)(4): Adequacy of Representation Requirement

Rule 23(a)'s Adequacy of Representation Requirement requires that the representative parties "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is grounded in due process concerns, as class members are entitled to adequate

representation before an entry of a judgment that binds them. S*ee Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). To determine whether putative class members have received adequate representation, this Court must consider: (1) whether "class counsel is 'qualified, experienced and generally able to conduct the litigation," and (2) whether class members have antagonistic interests. *see Frank*, 228 F.R.D. at 182 (*quoting In re Drexel Burnham Lambert*, 960 F.2d at 291.). Here, Class Counsel is qualified and able to litigate the claims in this matter. Class Counsel has litigated the class claims in the litigation to date. Class Counsel focuses a substantial portion of its practice on employment litigation, and is experienced in actions arising under federal and state wage and hour laws. Mullin Dec. ¶7. In addition, Class Counsel has committed substantial resources to this litigation, and will continue to do so. Mullin Dec. ¶11. Further, as detailed above, Plaintiffs contend that they possess the same type of interests and suffered the same type of injury as the other proposed Class Members. Therefore, Plaintiffs submit that the adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of a settlement class.

5. Rule 23(b)(3): Predominance Requirement

Rule 23(b)(3)'s Predominance Requirement is "designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Frank*, 228 F.R.D. at 183 (citations and internal quotations omitted). It is satisfied if common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication. *Id.* (*quoting Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Defendants' alleged liability on Plaintiffs' New York State Labor Law claims is based upon its alleged failure to properly notify tipped employees of the application of a tip credit, failure to provide notices required by the NYLL, and failure to compensate employees for one

9

additional hour at the minimum hourly rate for shifts in excess of ten hours. As explained above, the resolution of this claim involves common issues. Moreover, Plaintiffs contend that the common issues will predominate because they were applied to all employees. As a result, Plaintiffs submit that the common factual and legal issues raised by the aforementioned allegations will predominate.

6. Rule 23(b)(3): Superiority Requirement

The Superiority Requirement mandates that "the class action be superior to other methods of adjudication." *Frank*, 228 F.R.D. at 183. Where a class is being certified for settlement purposes, three factors are pertinent to this determination:

> (a) the interest of members of the class in individually controlling the prosecution ... of separate actions;
> (b) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class;
> (c) the desirability ... of concentrating the litigation ... in the particular forum.

*Id.* (*quoting* FED. R. CIV. P. 23(b)(3)).

Plaintiffs argue that the Superiority Requirement is satisfied for the Class because there is no indication that Class Members seek to individually control their cases, no individual litigation is pending in other forums, and there is no reason that this forum is undesirable for any reason. Accordingly, Plaintiffs submit that certification of settlement classes is superior to any other method of resolving this matter, as it will promote economy, expediency, and efficiency.

**C. The Settlement Is Fair, Reasonable and Adequate**

Under Rule 23, a court's review of a proposed class settlement is a "two-step process." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, l02 (S.D.N.Y. 1997). Initially, the court decides whether the settlement should be provisionally approved and, if this is so, "notice

10

is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.* At the provisional approval stage the court need only determine whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also In re Prudential Sec. Inc. Ltd. Pships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)(noting that the court's first-stage analysis consists of a review for "obvious deficiencies"). Where no facial deficiencies exist, and the settlement appears to be the product of arms-length negotiations, preliminary approval should be granted:

> Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.

*Nasdaq Market-Makers*, 176 F.R.D. at 102.

Under these standards, this Court should preliminarily approve the Settlement.

1. <u>Arms-Length Negotiation By Experienced Counsel</u>

As set forth above, the proposed Agreement was reached after extensive negotiations involving competent and experienced counsel for the parties. The settlement negotiations themselves were extensive, and they took place at arms' length, without collusion, fully preserving the integrity of the adversarial process. In this context, after carefully weighing all the evidence in the well-developed record, as well as Defendants' potential defenses, Class Counsel has determined that the proposed settlement is in the best interest of the Class Members. Mullin Dec. ¶¶12-13.

### 2. The Likelihood of Success Balanced Against the Relief Offered by the Agreement

The Parties recognize that the outcome of continued litigation is unpredictable. Defendants have potentially strong legal and factual defenses, giving rise to a real possibility that Plaintiffs and Class Members will recover nothing on their claims. Mullin Dec. ¶13. Defendants have agreed to provide a substantial sum, which is more than adequate consideration for the release agreed to in this action. This factor weighs heavily in favor of approving the settlement.

### 3. The Complexity, Expense, and Likely Duration of Litigation

Continued litigation would involve substantial expenditures of money and time by the Parties. For example, numerous depositions would need to be prepared for and taken, and significant document discovery would take place as the Parties litigate the legitimacy of the Class. Summary judgment would likely follow, and possibly even a trial. Regardless of who prevailed, appeals would likely follow.

In short, ultimate resolution of the claims would be a long, arduous, and expensive process for both the Parties and the Court. This weighs in favor of the settlement.

### 4. The Public Interest Weighs in Favor of Approving the Settlement

The public interest generally favors the resolution of litigation through compromise.

Courts have noted that "[t]here is a strong public interest in quieting any litigation; this is particularly true in class actions." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006)(internal citations and quotations omitted). As such, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Secs. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006). In this case, the proposed settlement is in the best interests of both the Class Members and the public, and it should be approved.

Approval is also appropriate under the FLSA. *see Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The settlement was negotiated at length by experienced counsel, and represents a reasonable and fair resolution of the claims of the FLSA Class Members.

### D. The Court Should Approve the Notice Materials and the Release

FED. R. CIV. P. 23(e) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23 (e)(l). The proposed Notice would satisfy this requirement.

The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). In the Second Circuit, notice is adequate if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Wal-Mart Stores, Inc. v. Visa U S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Moreover, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & .Jacquelin*, 417 U.S. 156, 176 (1974). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating when and how members may elect to be excluded. FED. R. CIV. P. 23(c)(2)(B).

In this case, the form and the manner of the Notice will inform Class Members of, among other things, the nature of the action, the definitions of the classes certified, the class claims, the right to opt-out, and the right to object to the settlement.

The settlement proposes that, upon entry of an Order granting this Motion, Plaintiffs' counsel will mail a copy of the Notice to each member of the Class. Class Members will have 45 days to consider the proposed settlement and decide whether to opt out of it.

The foregoing plan provides the best notice practical under the circumstances and will provide Class Members a full and fair opportunity to consider the terms of the proposed settlement and make a fully informed decision on whether to participate, object, or opt out of the settlement.

This Court should also approve the release of claims in the settlement. This release was bargained for at arms-length and is part of the compromise that resulted in the Settlement Fund. The language of the releases is fair and releases claims relating to the Litigation or that arise from the facts alleged therein.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the instant Motion and grant:

(1) provisional certification of the Rule 23 Class for settlement purposes; (2) conditional certification of the FLSA Class for settlement purposes; (3) preliminary approval of the Agreement; (4) approval of the Notice Materials; (5) preliminary approval of the releases of claims set forth in the Agreement; and (6) an Order setting dates for a Fairness Hearing within 60 days, and for related events.

Rochester, NY
March 18, 2016

/s/_____
Robert L. Mullin
Justin Cordello
Attorneys for Plaintiffs
**Ferr & Mullin, P.C.**
7635 Main St. Fishers
P.O. Box 440
Fishers, NY 14453
telephone (585) 869-0210
rlmullin@FerrMullinLaw.com
**Cordello Law, PLLC**
693 East Ave., Suite 220
Rochester NY 14607
telephone (585) 857-9684
Justin@cordellolaw.com